**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

Attorneys for Plaintiff Shari Clark

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shari Clark, a married woman, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Chelton Avionics, Inc., a foreign corporation; | **(Jury Trial Demanded)** |
| Defendant. | |

Plaintiff Shari Clark, by and through counsel, for her Complaint against Defendant Chelton Avionics, Inc. alleges:

## I.  NATURE OF CLAIM

1.    This is a proceeding for damages against Defendant Chelton Avionics, Inc. ("Chelton") to redress the deprivation of rights secured to Plaintiff Shari Clark ("Plaintiff Clark") by the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq*., as amended by the Equal Pay Act, 29 U.S.C. §206 ("EPA").

## II. JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and the EPA.

## III.    VENUE

3.      Based on 28 U.S.C. §1391 and the EPA, venue is proper because Chelton does business in Yavapai County, Plaintiff Clark resides and is employed in Yavapai County and the employment practices detailed in this Complaint occurred within Yavapai County.

## IV.    PARTIES

4.      Plaintiff Shari Clark is female and a married woman who resides in Prescott, Arizona.

5.      Defendant Chelton is a Delaware corporation doing business in the State of Arizona and is an employer under the EPA.

## VI.  FACTUAL BACKGROUND

8.      Plaintiff Clark started working for Chelton in 2002.

9.      Prior to the many events described herein, Plaintiff held the position of Buyer III as of May 2007.

10.     During the relevant time period herein, all Buyer IIIs had the same job description, goals and objectives and were measured on the same weekly metrics.  The Buyer III duties included purchasing Chelton's proprietary, high-end parts (Chelton's designed parts) and purchasing commercial off -the-shelf (COTS) parts.

11.      In late September, 2013, Plaintiff Clark became aware that she was being paid less than a male Buyer III, Doug Vogel, when she accidently opened his paycheck stub that had been mistakenly left on her desk.

12.     Mr. Vogel and Plaintiff Clark performed the same duties.  In fact, Mr. Vogel also had less than half the tenure and less experience with Chelton's proprietary, higher-end designed parts.

13.     Upon learning this information, on or around September 30, 2013, Plaintiff Clark spoke with her Manager Ralph Burk to discuss the pay disparity

14.     Mr. Burk informed Plaintiff Clark that he was not going to do anything about the pay disparity and told Plaintiff Clark a story.  He explained that he had one time, in another job, found out that a new hire was making more than him.  When he complained about the disparity, he had been terminated.

15.     Plaintiff Clark believed Mr. Burk's story was meant to be a threat to her job security if she continued with her complaint.  Therefore, she did not pursue her complaint further.

16.     At her next review at the end of January 2014, for the first time in her tenure with Chelton, Plaintiff Clark received a poor review from Mr. Burk.

17.      After the review, at a meeting in April 2014 with Mr. Burk, Supervisor Kelly LeGris, Plaintiff Clark and her long time female co-worker, Tina Hooper, both Hooper and Plaintiff Clark were given new goals in an EiD/SOF (Excellence in Delivery / Standard Operating Framework) for purchasing that were impossible to achieve.

18.     When Plaintiff Clark questioned the goals and the fact they could not be achieved, Mr. Burk told Plaintiff Clark and Ms. Hooper that he agreed the goals were unattainable, but those were his marching orders.

19.     On or around May 16, 2014, Ralph Burk resigned.

20.     In July 2014, prior to having a new manager, Plaintiff Clark, with Mr. Burk and his threats of reprisal no longer present, took her pay differential concerns to Ms. LeGris who informed Plaintiff Clark that it was not something she had the ability to help with.

21.     Subsequent to her discussion, Plaintiff Clark was assigned a Procurement Manager, Mr. Marc Boucher.

22.     On or about August 26, 2014, Plaintiff Clark brought her concerns to Mr. Boucher about pay differential for her and Ms. Hooper when compared to Mr. Vogel.

Plaintiff Clark requested equal pay for all Buyer III employees, and the removal of the EID letter and poor review from her personnel file.

23.   The following day, Mr. Boucher told Plaintiff Clark that there was no EID letter in her file and that the review could not be removed.  He further told Plaintiff Clark that he would take her salary concerns directly to human resources.

24.   On August 28, 2014, Plaintiff Clark emailed the Human Resources Director, Karen Andreason about the pay differential between the female and male Buyer IIIs.

25.   Within a week, Plaintiff Clark was informed that the company was going through a "broadbanding" process with regard to pay grades and positions for the Buyer IIIs which included new education requirements.  Plaintiff Clark was also told that they were now creating educational requirements for the Buyer III positions that Plaintiff Clark did not have, even though Plaintiff Clark had performed the Buyer III position for years without any issue.

26.   On or about October 3, 2014, Plaintiff Clark and Ms. Hooper were called into a meeting with Mr. Boucher to discuss broadbanding.  At that time, Plaintiff Clark again reiterated that human resources needed to address the salary issue, and that she was not really interested in working on the broadbanding until the issue was resolved.

27.   On October 10, 2014, Plaintiff Clark again emailed Ms. Andreason about the pay issues.

28.   One week later, Plaintiff Clark was informed by Defendant's attorney that she was being demoted to a Buyer I position, but would receive a slight pay raise.

29.   On November 3, 2014, Plaintiff Clark met with the Director of Operations Bryan Chambers, Ms. Andreason, and Mr. Boucher with regard to whether Plaintiff Clark would take part in the educational broadbanding.  Plaintiff Clark stated that she would not make the five-year education commitment that was added to a position she was already doing.

30.   In early November 2014, Plaintiff Clark was informed that she had been moved to a Buyer I position, but she received an upgrade in her salary.

31.     Even though she was now a Buyer I, Plaintiff Clark continued to perform the same job function and job duties she performed as a Buyer III.  Additionally, Plaintiff Clark continued to perform the same job duties as the above-described less experienced and less tenured, Doug Vogel.

32.     On February 5, 2015, Plaintiff Clark was informed that she was being let go from her position as Buyer I.

33.     Neither Mr. Vogel or Ms. Hooper were terminated.  Moreover, unlike Plaintiff Clark, Ms. Hooper never complained about unequal pay.

34.     Shortly after her termination, Plaintiff Clark was replaced by a male employee who had apparently been lined-up to take her position prior to her last day.

## FIRST CLAIM FOR RELIEF

## (Violation of the Equal Pay Act)

35.     Plaintiff realleges all the allegations fully set forth above.

36.     Defendant has repeatedly and willfully violated, and continues to violate, Section 206(d) of the EPA by discriminating between employees on the basis of sex by paying wages to Plaintiff at a rate less than the rate at which it pays wages to male employees who work under similar working conditions within the same establishment and who perform substantially equal jobs, and who have job duties requiring substantially equal skill, effort and responsibility as Plaintiff.

37.     Defendant has repeatedly and willfully violated, and continues to violate Section 206(d) of the EPA by discriminating between employees on the basis of sex by providing different compensation plans to male employees who work under similar working conditions within the same establishment and who perform substantially equal jobs, and who have job duties requiring substantially equal skill, effort and responsibility as Plaintiff.

38.     Defendant's violation of the EPA was willful and Plaintiff is therefore entitled to damages in the amount of the difference between the wages actually received by Plaintiff

and the wages paid to male employees for equal work within the meaning of the Equal Pay Act, together with an additional equal amount as liquidated damages as authorized by Section 216(b) and Section 206(d)(3) of the Act.

**SECOND CLAIM FOR RELIEF**

**(Violation of Equal Pay Act Retaliation)**

39.     Plaintiff realleges all the allegations fully set forth above.

40.     Defendant has violated Section 215(a)(3) of the EPA when it retaliated against and terminated the employment of Plaintiff for her repeated good faith complaints of violations of the EPA in the workplace.

41.     Defendant terminated Plaintiff's employment where Plaintiff's co-workers who did not report potential violations of the EPA were not terminated.

42.     Plaintiff's reports of the violation of the EPA were a substantial factor in Defendant's decision to terminate Plaintiff's employment.

43.     As a result of Defendant's retaliation against Plaintiff, Plaintiff has sustained damages in the form of lost wages and value of benefits.

44.     Defendant's violation of the EPA was willful and Plaintiff is therefore entitled to doubling of the damages set forth above as liquidated damages as authorized by Section 216(b) and Section 206(d)(3) of the Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.     This Court declare the actions complained of herein to be in violation of the Equal Pay Act;

2.     Actual damages be awarded to Plaintiff and against Defendant in the form of back pay, future lost pay, and the value of lost benefits to be proven at trial;

3.     For back pay and liquidated damages under the EPA;

4.     Plaintiff be awarded her attorneys' fees pursuant to the EPA;

5.     Plaintiff be awarded her costs; and

6.     Plaintiff be awarded all other relief that this Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Clark hereby demands a jury trial.


DATED this 24th day of August, 2016.

                                        SCHLEIER LAW OFFICES, P.C.


                                        /s/ Bradley H. Schleier
                                        Bradley H. Schleier
                                        3101 North Central Ave., Suite 1090
                                        Phoenix, Arizona 85012
                                        Attorney for Plaintiff Shari Clark